# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANACOSTIA RIVERKEEPER, INC. and FRIENDS OF THE EARTH,**<br><br>　　**Plaintiffs,**<br><br>　　　**v.**<br><br>**LISA JACKSON, in her official capacity as Administrator of the United States Environmental Protection Agency,**<br><br>　　**Defendant.** | **Civil Action No.  09-0098 (JDB)** |

## MEMORANDUM OPINION

Before the Court is [13] the Environmental Protection Agency's ("EPA") motion for partial dismissal and partial remand without vacatur.  In this action, plaintiffs challenge certain pollution limits promulgated by EPA for the waters of the District of Columbia as inconsistent with the Clean Water Act, 33 U.S.C. § 1251 et seq.  These limits, called total maximum daily loads ("TMDLs"), define the maximum amount of a pollutant that can enter a segment of water and still permit that water to meet water quality standards.  See 33 U.S.C. § 1313(d)(1)(C).  The pollutant limits must be expressed as "daily" limits.  See Friends of the Earth v. Envtl. Prot. Agency, 446 F.3d 140, 144 (D.C. Cir. 2006).

Plaintiffs assert that the TMDLs at issue here are expressed improperly as "seasonal" or "annual" limits, and therefore are invalid under Friends of the Earth.  EPA now concedes that the "holding in Friends of the Earth extends to the [pollutant limits] that are the subject of Plaintiffs' complaint."  Def.'s Mot. for Partial Dismissal and Partial Remand ("Def.'s Mot.") [Docket Entry 13], at 1.  Hence, the only question for the Court "is the appropriate remedy for this legal

deficiency." Id.[1]

EPA contends that the deficient TMDLs should be remanded to the agency but not vacated. See id. at 9. Plaintiffs, for their part, argue that the Court must vacate the deficient TMDLs, but should stay vacatur "to allow a reasonable time for EPA to revise the TMDLs." Pls.' Opp'n at 8-10. Plaintiffs also requested that the Court "direct the parties to file submissions with the Court regarding the appropriate duration of [a] stay [of vacatur] needed to allow EPA a 'reasonable opportunity' to revise the challenged TMDLs." Id. at 12. The Court agreed with that request, and ordered the parties to submit their proposals regarding the appropriate length of a stay. See Apr. 21, 2010 Order [Docket Entry 21]. The parties have now provided their submissions on this issue, which propose vastly different periods for a stay of vacatur.

The Court concludes that the proper remedy here is to vacate the challenged rules, but stay vacatur in order to permit EPA an opportunity to correct the deficient TMDLs. In Friends of the Earth, which the parties agree resolves plaintiffs' substantive challenges here, the D.C. Circuit remanded similarly-deficient TMDLs to the district court "with instructions to vacate EPA's approvals." 446 F.3d at 148. Recognizing, however, that neither the Friends of the Earth nor the EPA "wants the Anacostia River to go without . . . TMDLs," the court indicated that "the parties may move to stay the district court's order on remand to give" EPA an opportunity to amend its

_____

[1] The parties agree that because EPA has superceded two of the TMDLs challenged in plaintiffs' complaint with new TMDLs that conform to Friends of the Earth, plaintiffs' claims as to these two TMDLs are moot. See Def.'s Mot. at 7-9; Pls.' Mot. for Mediation and Opp'n to Def.'s Mot. ("Pl.'s Opp'n") [Docket Entry 15], at 2, 7-8; see also Fund for Animals v. Hogan, 428 F.3d 1059, 1064 (D.C. Cir. 2005) (subsequent agency action superceding purported defects in earlier action moots challenge to earlier action). Accordingly, the Court will dismiss as moot the challenges to the TMDL referenced in paragraph 24e of the complaint and the polychlorinated biphenyls limits in the TMDL referenced in paragraph 24b. The remaining limits in the paragraph 24b TMDL cannot be dismissed because they have not been superceded.

TMDLs.  Id.  The D.C. Circuit suggested this remedy despite the fact that the parties raised the possibility, albeit briefly, of remand without vacatur.  See Def.'s Reply in Supp. of Mot. to Dismiss [Docket Entry 16], at 4, 7.  The D.C. Circuit's remedial conclusion in the analogous situation presented by Friends of the Earth persuades this Court that it should adopt the same remedial approach here.

Moreover, although EPA is correct that a district court has discretion to order a remand without vacatur, see, e.g., La. Fed. Land Bank Ass'n. v. Farm Credit Admin., 336 F.3d 1075, 1085 (D.C. Cir. 2003); Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150-51 (D.C. Cir. 1993), that remedy is unavailable given the deficiencies in the TMDLs here. "The decision whether to vacate depends on [1] 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and [2] the disruptive consequences of an interim change that may itself be changed.'"  Allied-Signal, 988 F.2d at 150-51 (quoting Int'l Union, United Mine Workers v. Fed. Mine Safety and Health Admin., 920 F.2d 960, 967 (D.C. Cir. 1985)).

Here, EPA's erroneous conclusion that it could express TMDLs in terms of annual or seasonal pollutant limits is unquestionably a material deficiency in the regulation.  As EPA acknowledges, the error requires it to develop entirely new TMDLs, based on several years of new data collection.  See Def.'s Status Report [Docket Entry 21], Ex. 1 (Second Decl. of Helen Drago ("Second Drago Decl.")), at ¶¶ 11, 13.  Quite simply, EPA will be unable to justify the challenged TMDLs "in a manner that is consistent with the statute."  Milk Train, Inc. v. Veneman, 310 F.3d 747, 756 (D.C. Cir. 2002); accord WorldCom, Inc. v. FCC, 288 F.3d 429, 434 (D.C. Cir. 2002) (remand without vacatur appropriate where "non-trivial likelihood" that

agency would be able to justify rule on remand); Fox Television Stations, Inc. v. Fed. Commc'ns

Comm'n, 280 F.3d 1027, 1049 (D.C. Cir. 2002) (vacatur appropriate where rule is

"irredeemable"), reh'g granted on other issues, 293 F.3d 537 (D.C. Cir. 2002). Accordingly, the

first Allied-Signal factor does not support remand without vacatur. See Heartland Reg'l Med.

Ctr. v. Sebelius, 566 F.3d 193,198 (D.C. Cir. 2009) ("When an agency may be able readily to

cure a defect in its explanation of a decision, the first factor in Allied-Signal counsels remand

without vacatur.").

On the other hand, the second Allied-Signal factor -- the disruptive effect of vacatur --

weighs in favor of remand without vacatur. Indeed, as plaintiffs admit, "[n]either the Plaintiffs

nor EPA wish for the waters of the District of Columbia to go without TMDLs, nor would the

public interest be served by an immediate vacatur." Pls.' Status Report [Docket Entry 22], at 2.

But any disruptive effects of vacatur will be mitigated, if not eliminated, by staying vacatur. See

Friends of the Earth, 446 F.3d at 148. Accordingly, although the second Allied-Signal factor

weighs in favor of remand without vacatur, it cannot outweigh the fact that EPA must develop

entirely new TMDLs to correct its error. Because remand without vacatur is inappropriate, and

in light of the D.C. Circuit's remedial conclusion in Friends of the Earth, the Court will vacate

the challenged TMDLs, but will stay vacatur.

The only remaining question, then, is the appropriate length of a stay of vacatur.

Plaintiffs assert that a 240-day stay is appropriate for all TMDLs except for the TMDL at

paragraph 24n of plaintiffs' complaint. See Pls.' Status Report at 1. According to plaintiffs, EPA

should have until May 1, 2011, to develop the TMDL at paragraph 24n, as it is related to other

TMDLs EPA must develop by that date. See id. at 3. Plaintiffs also indicate that "if the Court

decides to consider a longer stay, the Court should stay vacatur for no longer than three years."
Id. at 1.  They base this deadline on the fact that, "[a]s EPA itself concedes, TMDLs are typically
completed in three to five years."  Id. at 6; see also Def.'s Mot., Ex. 1 (First Decl. of Helene
Drago ("First Drago Decl.")), ¶ 8 ("The process of developing a TMDL is complex and time-
consuming. . . .  From the point at which data gathering begins, it is not uncommon for the
development of a TMDL to take three to five years.").[2]

EPA asserts that it needs more time than plaintiffs' proposed schedule allows given "(1)
the amount of work needed to develop more than 300 TMDLs that will withstand further court
review under the [Clean Water Act]; and (2) the resources available to the TMDL program in
EPA's Region III and the other demands, including court-ordered demands, on those resources."
Def.'s Status Report at 2-3.  EPA therefore proposes a four-part stay:

> Tier One: a stay until May 31, 2011, for the TMDL referenced in paragraph 24n of
> plaintiffs' complaint.
>
> Tier Two: a stay until December 31, 2014, for the TMDLs referenced in
> paragraphs 24a, 24c, 24g, 24i, 24j, 24l of plaintiffs' complaint.
>
> Tier Three: a stay until December 31, 2017, for the TMDLs referenced in
> paragraphs 24b, 24d, 24f, 24h, 24k, 24m, 24o of plaintiffs' complaint, where the
> applicable water quality criteria have not changed since the development of the
> challenged TMDLs.

------

[2] Plaintiffs' opposition to a longer stay rests in part on their belief that EPA has engaged
in a "decades-long delay in establishing legally adequate TMDLs."  Pls.' Status Report at 2.  But
this premise is flawed: the TMDLs at issue here are invalid only in light of the D.C. Circuit's
Friends of the Earth decision in 2006.  Prior to that decision, EPA reasonably believed that the
challenged TMDLs complied with the Clean Water Act.  See Natural Res. Def. Council v.
Muszynski, 268 F.3d 91, 99 (2d Cir. 2001) ("[W]e agree with EPA that a 'total maximum daily
load' may be expressed by another measure of mass per time, where such an alternative measure
best serves the purpose of effective regulation of pollutant levels in waterbodies.").

Tier Four: a stay until December 31, 2020, for the TMDLs referenced in paragraphs 24b, 24d, 24f, 24h, 24k, 24m, 24o of plaintiffs' complaint, where the applicable water quality criteria have changed since the development of the challenged TMDLs.

Id. at 3-4.  In support of its request, EPA offers the declaration of Helene Drago, the TMDL Program Manager for the EPA's Water Protection Division having responsibility for the waters at issue in this case.  See Second Drago Decl. at ¶ 1.  In her declaration, Drago details the steps EPA must take to establish new TMDLs.  See id. at ¶¶ 11, 13.

For example, she explains that for the tier two TMDLs EPA must (1) secure funding; (2) develop contract proposals for contractors that will assist EPA in developing the TMDLs; (3) negotiate contracts with existing contractors; (4) develop the "sampling regimes" for bacteria; (5) monitor the waters at issue for twelve to eighteen months; (6) review the data and prepare the appropriate bacteria models; (7) "[e]valuate, select, and implement an approach for calculating daily loads"; (8) draft the TMDL and publish for comment; and (9) respond to comments, finalize the TMDL, and submit the final TMDL for approval.  Id. at ¶ 11.  The process for tier three and tier four TMDLs is similar, see id. at ¶ 13, although Drago indicates that monitoring for these TMDLs must occur after monitoring for the tier two TMDLs, as EPA "does not have funding available that would be sufficient to allow for simultaneous monitoring."  Id. at ¶ 12.  Drago also avers that the process for developing tier two, tier three, and tier four TMDLs cannot start until October 2011 because fiscal year 2012 is the first year in which EPA can fund grants for the contractors that assist in developing the TMDLs.  See id. at ¶¶ 11c, 13c.  And she indicates that these steps typically take three to five years to complete.  See First Drago Decl at ¶ 8.  Although EPA presents the timeframe as a range, it has offered no reason to adopt either of

the endpoints.  Therefore, for purposes of the analysis in this opinion, the Court concludes that a

TMDL typically takes four years -- both the average and midpoint of EPA's estimate -- to

develop.

EPA submitted a similar declaration from an individual previously holding Drago's

position to the district court in Friends of the Earth to support its motion to stay vacatur in that

court.  See Friends of the Earth v. Envtl. Prot. Agency, Civ. A. No. 04-0092 (D.D.C. Sept. 18,

2006) (order granting defendants' motion for a stay).  That court concluded that such information

"adequately demonstrated the reasonableness of the duration of the stay that [EPA sought]."  Id.

at 2.  So, too, here: as a general matter, this Court cannot discern in the Drago declaration any

reason to doubt EPA's representations of the process it must undertake, and its estimates about

the time and resources necessary, to develop the TMDLs.  Indeed, where an agency justifies its

conclusions with evidence, courts should not substitute their own predictions about the length of

time an agency needs to evaluate data and promulgate rules, especially where those predictions

turn on scientific matters.  Cf. Am. Farm Bureau Fed'n v. Envtl. Prot. Agency, 559 F.3d 512, 519

(D.C. Cir. 2009) ("We give an 'extreme degree of deference to the agency when it is evaluating

scientific data within its technical expertise . . . .'" (quoting City of Waukesha v. Envtl. Prot.

Agency, 320 F.3d 228, 248 (D.C. Cir. 2003))); Am. Radio Relay League, Inc. v. Fed. Commc'ns

Comm'n, 524 F.3d 227, 233 (D.C. Cir. 2008) ("Where a 'highly technical question' is involved,

'courts necessarily must show considerable deference to an agency's expertise.'" (quoting MCI

Cellular Tel. Co. v. Fed. Commc'ns Comm'n, 738 F.2d 1322, 1333 (D.C. Cir. 1984))).

The stay requested by EPA for the tier one TMDL falls comfortably within the four-year

average timeframe that is typical of TMDL development.  The Court therefore will defer to this

proposal, and accordingly will stay vacatur of the tier one TMDL until May 31, 2011.

The stays requested for the TMDLs in tiers two, three, and four, however, appear to exceed the typical four-year timeframe for TMDL development. Indeed, EPA requests a four-and-a-half year stay for tier three TMDLs, a seven-and-a-half year stay for tier three TMDLs, and a ten-and-a-half year stay for tier four TMDLs. But the Court's analysis of Ms. Drago's declarations suggests that looking only at the bare length of the stay is misleading. Rather, when the stays are considered in light of when EPA can begin developing tier two, three, and four TMDLs, the requested stays more closely track EPA's typical timeframe for TMDL development. According to Drago, "[f]rom the point at which data gathering begins, it is not uncommon for the development of a TMDL to take" four years. First Drago Decl. at ¶ 8 (emphasis added). And for the tier two TMDLs, monitoring cannot begin until October 1, 2011. See Second Drago Decl. at ¶ 11c. Based on the EPA's own estimates, then, it should be able to complete development of the tier two TMDLs by October 1, 2015. Because EPA's proposal for the tier two TMDLs -- December 31, 2014 -- is within this timeframe, the Court will defer to it. Therefore, it will stay vacatur of the tier two TMDLs until December 31, 2014.

For the TMDLs in tiers three and four, according to EPA, monitoring cannot begin until after monitoring for the tier two TMDLs is complete. See Second Drago Decl. at ¶ 12. EPA predicts that monitoring for the tier two TMDLs will take twelve to eighteen months, see id. at ¶ 11e, and will begin October 1, 2011, see id. at ¶ 11c. Therefore, it expects to complete monitoring for the tier two TMDLs between October 1, 2012 and April 1, 2013. Although EPA's estimates again involve a range, it has not provided any reason to adopt either endpoint. Therefore, the Court will again base its calculations on the average of the timeframe -- January 1,

2013.  In other words, the Court concludes that the EPA will complete monitoring for the tier two TMDLs on January 1, 2013.[3]

Given that EPA typically develops TMDLs within four years of commencing data collection, and data collection for tiers three and four TMDLs will not begin until between January 1, 2013, it is reasonable to conclude that EPA can develop tier three and tier four TMDLs by not later than January 1, 2017.  The Court therefore will stay vacatur of the tier three and four TMDLs until January 1, 2017.  The Court recognizes that this is shorter than EPA's proposed stay.  But there is nothing in the record to support the conclusion that developing tier three and tier four TMDLs is not typical of TMDL development generally.  Indeed, Drago indicates that developing tier four TMDLs -- the group of TMDLs for which EPA requests the longest stay -- is akin to developing "entirely new TMDLs."  Id. at ¶ 12g(ii) ("Where the water quality criterion has changed, entirely new TMDLs should be established.").  If this is so, and if new TMDL development takes on average four years, then developing tier four TMDLs should also take four years.

The Court is aware that the length of the stays of vacatur here may be somewhat out of the ordinary.  See Natural Res. Def. Council v. Envtl. Prot. Agency, 489 F.3d 1250, 1265 (D.C. Cir. 2007) (Rogers, J, concurring in part and dissenting in part) ("[O]ur stays of the mandate have tended, in fact, to be for months, not years." (citations omitted)).  But neither the Court, nor the parties, wants the District of Columbia waters at issue in this action to go without pollutant limits

---

[3] According to EPA, the factor precluding simultaneous monitoring for TMDLs in tiers two, three, and four is funding.  See Second Drago Decl. at ¶ 12.  In light of this order, EPA may be able to request additional funding that permits it to simultaneously monitor for tier two, three, and four TMDLs.

while EPA develops new pollutant limits, which will obviously take some time.  <u>See</u> Pl.'s Status Report at 2.  This is especially so given the fact that members of both Anacostia Riverkeepers and Friends of the Earth use the waters protected by the TMDLs here.  <u>See</u> <u>id.</u> at 5-6. Accordingly, the Court is persuaded that staying vacatur, even for these long periods, not only is consistent with the governing law, but also adequately protects the interests of both plaintiffs and EPA.

## CONCLUSION

For the foregoing reasons, the Court will dismiss plaintiffs' challenges to the TMDL referenced in paragraph 24e of plaintiff's complaint and the polychlorinated biphenyls limits in the TDML referenced in paragraph 24b of plaintiffs' complaint.  And the Court will vacate the remaining TMDLs, staying vacatur according to the schedule set forth in this opinion.  A separate Order will be issues on this date.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated: <u>May 25, 2010</u>